## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**ESTHER KIDWELL,**

                    **Plaintiff,**

**v.**

**BLUE VALLEY UNIFIED SCHOOL DISTRICT 229,**

                    **Defendant.**

**Case No. 25-2004-DDC**

## <u>MEMORANDUM AND ORDER</u>

Plaintiff Esther Kidwell needed back surgery on a short timeline.  Her doctor's office recommended that she not work "until reevaluated" two and a half weeks later.  Defendant Blue Valley Unified School District 229 swiftly fired her because she had exhausted her accrued leave.  Plaintiff sued, asserting that defendant had violated the Americans with Disabilities Act (ADA)[1] in three distinct ways:  failing to accommodate, discriminating, and retaliating.  Defendant now has moved for summary judgment.  Doc. 60.  The court grants in part and denies in part defendant's motion.  Plaintiff has raised a triable issue whether defendant violated the ADA by firing her instead of accommodating her disability.  But, on this summary-judgment

---

[1]     The ADA Amendments Act of 2008 ("ADAAA") amended the ADA and "went into effect on January 1, 2009." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1303 n.1 (10th Cir. 2017).  Here, the "events that form the basis for [plaintiff's] disability-related claims occurred after this [effective] date; therefore, the ADAAA is technically applicable here." *Id.*  The "ADAAA primarily effected revisions to the ADA's definition of 'disability.'" *Id.*  Because plaintiff's disability status isn't relevant to any issue decided here, the court "freely rel[ies] on authorities [existing] prior to ADAAA's effective date that apply and construe the ADA, insofar as they are relevant." *Id.*  For simplicity, the court refers to this governing law as the ADA. *See Jacobs v. Salt Lake City Sch. Dist.*, 154 F.4th 790, 795 (10th Cir. 2025) (referring to the governing law as the "ADA," not the "ADAAA").

record, no rational jury could find that defendant terminated plaintiff because of her disability or in retaliation. The court thus enters summary judgment against plaintiff's ADA discrimination and retaliation claims. The court explains these results, below, starting with background facts.

## I.    Background

The following facts either are uncontroverted or, if controverted, are construed in a light most favorable to plaintiff. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

Plaintiff worked for defendant as a special education para educator. Doc. 59 at 2 (PTO ¶¶ 2.a.iv., vii.). Plaintiff's position required her, among other duties, to twist, bend, and lift more than five pounds. Doc. 61-6 at 2 (DeFries Decl. ¶ 8).[2]

In September 2023, plaintiff awakened with back pain. Doc. 59 at 2 (PTO ¶ 2.a.ix.). Plaintiff had exhausted her accrued leave by this point. *See* Doc. 61-2 at 5 (Pl. Dep. 43:9–13); Doc. 61-15 at 3 (Def. Ex. 14). Still, she reported to defendant that she needed to go to her chiropractor. Doc. 59 at 2 (PTO ¶ 2.a.ix.). The next day, she had back surgery. *Id.* (PTO ¶ 2.a.x.). Defendant asked plaintiff when she could return to work, and plaintiff said she didn't know. Doc. 61-13 at 3 (Wilson Dep. 10:18–24). Defendant then asked plaintiff to provide a doctor's note predicting her earliest possible return date. *Id.* at 4 (Wilson Dep. 12:20–13:2). The parties hotly contest the meaning of the note that plaintiff secured from her medical provider. Here's the note:

---

[2]    Plaintiff tries to controvert this assertion, citing her deposition where she expressed that "aspects" of her job were "more sedentary and less demanding." Doc. 61-2 at 7–8 (Pl. Dep. 88:23–89:2). This assertion—that parts of the job weren't demanding—doesn't controvert the fact that her job occasionally required her to bend, twist, and lift more than five pounds.

September 25, 2023

Patient:     **Esther Kidwell**
Date of Birth: ▮▮▮▮▮
Date of Visit: **9/25/2023**

To Whom It May Concern:

It is my medical opinion that Esther Kidwell no work until re-evaluated on 10/10/2023.

If you have any questions or concerns, please don't hesitate to call.

Sincerely,

Jamie Sue Luttrell, CMA

Doc. 61-19 at 2 (Def. Ex. 18).  Defendant understood that plaintiff was requesting leave based on medical need.  Doc. 67-4 at 5 (Punswick Dep. 10:4–24, 11:1–10).  But two days later it fired her nonetheless because she didn't have any leave available.  Doc. 61-15 at 3 (Def. Ex. 3).

Following the surgery, plaintiff could have worked with certain restrictions—including no bending, twisting, and lifting more than 5–10 pounds—starting after October 10.  Doc. 67-6 at 6 (Green Dep. 18:14–19:14).  And defendant had vacant positions available that could have accommodated these restrictions.  *See* Doc. 67-9 at 2 (Ma Aff. ¶ 6).

II.      **Legal Standard**

Summary judgment is appropriate where the moving party demonstrates there is "no genuine dispute" about "any material fact" and that the movant is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  This standard dictates that the court "view the evidence and make inferences in the light most favorable to the non-movant."  *Nahno-Lopez v. Houser*,

3

625 F.3d 1279, 1283 (10th Cir. 2010) (citing *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1245–46 (10th Cir. 2010)).

"An issue of fact is 'genuine' 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party' on the issue." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue of fact is 'material' 'if under the substantive law it is essential to the proper disposition of the claim' or defense." *Id.* (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

The moving party bears "'both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law.'" *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002)). To carry this burden, the moving party "'need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim.'" *Id.* (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)). Even if the non-moving party fails to respond adequately, "the district court may not grant the motion without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law." *Reed v. Bennett*, 312 F.3d 1190, 1194–95 (10th Cir. 2002).

If the moving party satisfies its initial burden, the non-moving party "'may not rest on its pleadings, but must bring forward specific facts showing a genuine issue for trial [on] those dispositive matters for which it carries the burden of proof.'" *Kannady*, 590 F.3d at 1169 (quoting *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson*, 477 U.S. at 248–49. The specific "facts must be identified

by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Libertarian Party of N.M. v. Herrera*, 506 F.3d 1303, 1309 (10th Cir. 2007) (citing *Adler*, 144 F.3d at 671). Affidavits and testimony "must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1030–31 (10th Cir. 2022) (quotation cleaned up).

Federal courts don't view summary judgment as a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. Instead, it represents an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

## III.      Analysis

Plaintiff asserts three claims:  failure to accommodate; discrimination; and retaliation. Doc. 59 at 7 (PTO ¶ 4.a.). Take them in turn, below.

### A.      Failure to Accommodate

Start with plaintiff's failure-to-accommodate claim. "The definition of disability discrimination in federal law includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.'" *Hampton v. Utah Dep't of Corr.*, 87 F.4th 1183, 1191 (10th Cir. 2023) (quoting 42 U.S.C. § 12112(b)(5)(A)). "To establish a prima facie case of failure to accommodate, a plaintiff must make an initial showing that (1) she is disabled; (2) she is otherwise qualified; and (3) she requested a plausibly reasonable accommodation." *Herrmann v. Salt Lake City Corp.*, 21 F.4th 666, 674 (10th Cir. 2021) (quotation cleaned up). "If a plaintiff makes a prima facie case, the burden shifts to the defendant to present evidence either (1) conclusively rebutting one or more elements of plaintiff's prima facie case or (2) establishing an affirmative defense." *Id.* Defendant doesn't contest that plaintiff can satisfy the first two elements of a prima facie case.

Instead, defendant argues that plaintiff never requested an accommodation and even if she did so, it wasn't a plausibly reasonable one. Doc. 61 at 22–25. A rational jury could reject these arguments.

### 1.    Request for Accommodation

Defendant first argues that plaintiff never requested an accommodation. *Id*. at 23. "[B]efore an employer's duty to provide reasonable accommodations . . . is triggered under the ADA, the employee must make an adequate request, thereby putting the employer on notice" of its duty to accommodate. *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1049 (10th Cir. 2011). The law doesn't require "magic words" from the employee. *Foster v. Mountain Coal Co.*, 830 F.3d 1178, 1188 (10th Cir. 2016). But the employee's request "must make clear that the employee wants assistance *for his or her disability*." *C.R. England*, 644 F.3d at 1049 (quotation cleaned up) (emphasis in original). "That is, the employer must know of both the disability and the employee's desire for accommodations for that disability." *Id.* (quotation cleaned up). A reasonable jury could find that plaintiff here satisfied this standard.

The parties agree that plaintiff was disabled within the ADA's meaning. *See* Doc. 70 at 1 (admitting this fact). And there's ample evidence that defendant knew about plaintiff's surgery and her resulting disability. Defendant's corporate representative conceded that plaintiff requested leave. Doc. 67-4 at 5 (Punswick Dep. 10:4–24).[3] And defendant knew that this requested leave was for a "medical need[.]" *Id.* (Punswick Dep. 11:1–10); *see also* Doc. 61-13 at 4 (Wilson Dep. 12:5–24) (recounting asking plaintiff to provide a doctor's note about her leave in light of her emergency surgery). Taken together—request for leave and one based on medical

---

[3]    The corporate representative's position was that plaintiff requested leave but never requested an accommodation. Doc. 67-4 at 5 (Punswick Dep. 10:4–24). That position isn't a tenable one. As explained below, our Circuit consistently has recognized that leave, requested in the right circumstances, qualified as an appropriate request for accommodation. *See below* § III.A.2.b.i.

need—a rational jury could conclude that plaintiff lodged an "adequate request" for a disability accommodation because she put defendant on notice that she needed time off due to a health issue. *C.R. England*, 644 F.3d at 1049–50. So, defendant isn't entitled to summary judgment on this basis.

### 2.    Plausibly Reasonable Accommodation

The court now turns to defendant's second argument, which asserts that plaintiff hasn't identified a plausibly reasonable accommodation. Once more, a rational factfinder could disagree. Before discussing the substance of the accommodation inquiry, the analysis takes a brief detour to discuss defendant's obligations once plaintiff requested an accommodation.

### a.    Interactive Process

Our Circuit "require[s] an employer and employee to engage in . . . 'the interactive process' to determine an appropriate" accommodation. *Dansie v. Union Pac. R.R. Co.*, 42 F.4th 1184, 1193 (10th Cir. 2022) (quoting *Albert v. Smith's Food & Drug Ctrs., Inc.*, 356 F.3d 1242, 1252 (10th Cir. 2004)). When an employee provides "notice to the employer of [her] disability and any resulting limitations[,]" it "triggers the employer's responsibility to engage in the interactive process where both parties must communicate in good-faith." *Id.* "This interactive process contemplates 'an affirmative obligation to undertake a good faith back-and-forth process between the employer and the employee, with the goal of identifying the employee's precise limitations and attempting to find a reasonable accommodation for those limitations.'" *Id.* (quoting *Aubrey v. Koppes*, 975 F.3d 995, 1009 (10th Cir. 2020)). "A workable accommodation may not exist, 'but the ADA mandates that the employer work with the employee to try to find one.'" *Id.* (quoting *Aubrey*, 975 F.3d at 1009).

Here, as the court already has explained, a jury could find that plaintiff requested an accommodation for her disability when she communicated that she had back surgery and needed

to miss work, thus triggering defendant's duty to engage in the interactive process.  The court thus disagrees.  Plaintiff properly initiated the interactive process.  *See* Doc. 70 at 13–14.

Defendant's alternative argument—that plaintiff is the one who terminated the interactive process—is a frail one.  *See id.* at 14–16.  Recall that the doctor's note expressed a "medical opinion that Esther Kidwell no work until re-evaluated on 10/10/2023."  Doc. 61-19 at 2 (Def. Ex. 18).  Defendant asserts that this terse note extinguished the good-faith communications between the parties.  Doc. 70 at 14–16.  Perhaps—but a rational jury could disagree.  After defendant asked plaintiff how long she expected to miss work and plaintiff responded that she didn't know, defendant asked for a doctor's note.  When defendant received that note, it abruptly terminated plaintiff, explaining to her that she was out of contractually provided leave and FMLA leave.  Defendant made no effort to determine how likely it was that plaintiff would return on October 10; what the prognosis for her disability was; or whether she could return to work in the near future.  *See Aubrey*, 975 F.3d at 1008 ("[A] jury could find that [defendant] made no effort to discover exactly what [plaintiff's] limitations were at that time, nor in exploring with [plaintiff] whether there were any accommodations that would have enable[d] her to return to work at that time, or in the near future, even with her limitations.").[4]  The record evidence suggests—strongly so—that defendant mistakenly believed that it needn't accommodate plaintiff because she had exhausted her leave.  *See* Doc. 61-15 at 3 (Def. Ex. 14)

---

[4]    Our Circuit discounted a similarly terse note from a medical provider in *Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170, 1174 (10th Cir. 1996).  There, an occupational therapist submitted a note expressing the view that plaintiff "was 'not a candidate for employment at this time as a kitchen manager.'"  *Id.*  Our Circuit rejected defendant's argument that this note, as a matter of law, meant that plaintiff wasn't qualified to work as a kitchen manager.  *Id.*  The occupational therapist's "general statement" didn't "address the essential functions" of plaintiff's job or "conclusively establish that" plaintiff couldn't "perform those functions."  *Id.*  So too here.  The doctor's note in this case said little.  It didn't address the functions of plaintiff's job or when (and whether) plaintiff could perform those functions.

8

(imposing a "voluntary resignation" on plaintiff "[b]ecause [her] leave has been exhausted"). But the ADA commands an employer's compliance no matter whether an employee has available leave or not. *See Dansie*, 42 F.4th at 1196 n.5 (explaining that, even though plaintiff hadn't worked long enough to accrue FMLA leave, "the ADA entitled Plaintiff to receive accommodations with no waiting period").

Admissible evidence in the summary-judgment record supports the view that defendant short-circuited the interactive process by firing plaintiff promptly after receiving the doctor's note. So, a reasonable jury could find that defendant "failed to meet its obligation of engaging with [plaintiff] in good faith in an interactive process to identify her precise limitations and to explore whether there was any accommodation that could enable [plaintiff] to return to work[.]" *Aubrey*, 975 F.3d at 1009. "In fact, a reasonable jury could find that [defendant] affirmatively acted to avoid having to consider possible accommodations" by swiftly terminating plaintiff once it received the doctor's note. *Id.* To be sure, a "failure to engage in the interactive process is not a standalone claim." *Dansie*, 42 F.4th at 1194 n.2. "But 'an employer's failure to engage in the interactive process will often make it difficult to resolve a case for the employer on summary judgment on this ground.'" *Id.* (quoting *Aubrey*, 975 F.3d at 1010). "And this makes sense. When an employer does not engage in the interactive process, that employer will unlikely be able to establish the absence of a disputed fact" about "the existence of a reasonable accommodation." *Id.* The court turns to this inquiry—whether a plausibly reasonable accommodation existed—next.

9

### b.  Reasonable Accommodations

Plaintiff argues that a combination of two accommodations reasonably could have facilitated her continued employment:  temporary leave and reassignment.  A jury could agree.[5]

### i.  Temporary Leave

Consider temporary leave first.  "It is well-settled that a request for leave may lead to a 'reasonable' accommodation—such a request may allow an employee sufficient time to recover from an injury or illness such that the employee can perform the essential functions of the job (i.e., attend work) in the future."  *Herrmann*, 21 F.4th at 676 (quotation cleaned up).  "But an employer does not have to retain a disabled employee on unpaid leave indefinitely or for excessive time."  *Dansie*, 42 F.4th at 1195.  Defendant seizes on this point, arguing that plaintiff, with her doctor's note, requested indefinite leave.  Doc. 61 at 24.[6]  Yet again, a reasonable jury could disagree.

---

[5]  "Whether an accommodation is reasonable is a mixed question of law and fact."  *Aubrey*, 975 F.3d at 1010.  Our Circuit "prescribes another burden-shifting formula" for assessing whether an accommodation is reasonable.  *Id.*  "First, the employee need only show that an accommodation seems reasonable on its face, *i.e.*, ordinarily or in the run of cases."  *Id.* (quotation cleaned up).  "A proposed accommodation is not reasonable on its face if it would not enable the employee to perform the essential function at issue."  *Id.* (quotation cleaned up).  "Second, if the employee presents a facially reasonable accommodation, the burden of production then shifts to the employer to present evidence of its inability to accommodate.  The employer must show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances."  *Id.* (quotation cleaned up).  "Third, if the employer presents such evidence, the employee has the burden of coming forward with evidence concerning her individual capabilities and suggestions for possible accommodations to rebut the employer's evidence."  *Id.*  Both parties' briefs here fail to engage this framework.  This isn't the last legal framework that the parties inexplicably have ignored.  Defendant argues only that plaintiff hasn't identified a reasonable accommodation.  But defendant never argues that plaintiff's suggested accommodations would impose "undue hardship" on it.  *Id.* (quotation cleaned up).  The court thus confines its inquiry to whether plaintiff has satisfied the first prong of this burden-shifting framework—identifying a facially reasonable accommodation.

[6]  Defendant maintains that plaintiff never requested an accommodation.  Doc. 61 at 24.  The court already has rejected this argument.  Defendant has argued, in the alternative, that if plaintiff requested an accommodation it was an unreasonable accommodation for indefinite leave.  *Id.*  The court addresses this alternative argument here.

10

Recall the language of the doctor's note:  "It is my medical opinion that Esther Kidwell no work until re-evaluated on 10/10/2023."  Doc. 61-19 at 2 (Def. Ex. 18).  This note, while terse, would permit a reasonable jury to find a suggested return date.  That's enough.  *See Herrmann*, 21 F.4th at 677 (explaining, in the context of chronic conditions, that "an estimate of when symptoms will subside and allow return to work is the best an employee or medical provider can offer").  Viewed in the light most favorable to plaintiff, the note at issue here says that plaintiff couldn't work until October 10.  So, "a jury could find that Plaintiff was not asking for an indefinite amount of time off from work."  *Dansie*, 42 F.4th at 1195.  This conclusion suffices to avoid summary judgment.  *See id.* at 1196 (reversing summary judgment because "a jury could find that Plaintiff requested a plausibly reasonable accommodation that would have permitted him to return, in the near future, to performing the essential functions of his job").

Other courts confirm this outcome.  The District of New Mexico considered whether a doctor's note nearly identical to the one here gave defendant reasonable notice of plaintiff's expected return date.  *Gutierrez v. DSG N.M., LLC*, No. 20-cv-00174-DHU-SCY, 2022 WL 1500620, at *11 (D.N.M. May 12, 2022).  The *Gutierrez* note explained that "Plaintiff needed a leave of absence until June 2019 at which time Plaintiff would be reevaluated."  *Id.  Gutierrez* rejected defendant's position that plaintiff had requested "an indefinite leave of absence[.]"  *Id.* (quotation cleaned up).  When viewed in the light most favorable to plaintiff, the *Gutierrez* doctor's note projected a likely date plaintiff could return to work—enough to qualify as a plausibly reasonable accommodation.  *Id.*  The same conclusion applies here.  Although it wasn't definitive, plaintiff's doctor's note—viewed in the light most favorable to plaintiff—suggested that she could return to work in less than three weeks.[7]

---

[7]    This case is unlike the ones defendant cites.  Defendant asserts that this case is "just like *Hudson v. Telecommunications Corp.*, 87 F.3d 1167, 1169 (10th Cir. 1996)."  Doc. 61 at 16.  It's not.  In *Hudson*,

Later developments confirm this conclusion. One of plaintiff's medical providers testified that plaintiff could have returned to work after October 10, so long as she didn't bend, twist, or lift more than five to 10 pounds. Doc. 67-6 at 6 (Green Dep. 18:14–19:14). To be sure, the relevant inquiry asks about information defendant possessed when it terminated plaintiff. *Robert v. Bd. of Cnty. Comm'rs*, 691 F.3d 1211, 1218 (10th Cir. 2012). But this after-the-fact development supports plaintiff's position that a reasonable factfinder could view the doctor's note as suggesting a plausible return date of October 10.

Defendant cries foul, faulting plaintiff for failing to furnish a clearer return-date estimate. But defendant hardly can blame plaintiff for not providing more information. If defendant's decision making turned on the scope of plaintiff's leave request, it could have asked her for more information and thus continued the interactive process. In fact, the doctor's note invited such an inquiry: "If you have any questions or concerns, please don't hesitate to call." Doc. 61-19 at 2 (Def. Ex. 18). Instead of clarifying with plaintiff or her medical provider, defendant swiftly fired plaintiff. As "mentioned above, when an employer does not engage in the interactive process, that employer will unlikely be able to establish the absence of a disputed fact as to the existence of a reasonable accommodation." *Dansie*, 42 F.4th at 1197. This is so here. "Because a jury could conclude Defendant did not fulfill its responsibilities during the interactive process to work with Plaintiff to identify the type of position that would reasonably accommodate [her]

---

plaintiff suffered from carpal tunnel syndrome, disabling her from performing some of her work duties—including typing. 87 F.3d at 1168. Although plaintiff there told her employer that her injury was temporary, she "failed to present any evidence of the expected duration of her impairment[.]" *Id.* at 1169. And the *Hudson* plaintiff's doctor made notes "underscor[ing] the uncertainty of her prognosis." *Id.* So, our Circuit affirmed summary judgment, opining that "unpaid leave of indefinite duration" was an unreasonable accommodation as a matter of law. *Id. Hudson* is unlike this case. Here, plaintiff presented evidence from which a jury reasonably could infer an end date to her leave. And unlike in *Hudson*, plaintiff's doctors here never have highlighted the uncertainty of her recovery. Plus, unlike plaintiff here, the *Hudson* plaintiff didn't present evidence suggesting defendant failed to engage in the interactive process.

limitations, a fact question remains whether a reasonable accommodation would have been possible had Defendant engaged in the interactive process." *Id.*

In sum, a reasonable trier of fact could conclude that short-term leave represented a reasonable accommodation for plaintiff from her surgery in late September until October 10.

### ii.    Reassignment

Defendant argues that plaintiff, even assuming she could return on October 10, couldn't perform the essential functions of her job because of the restrictions her medical provider had suggested—no bending, no twisting, and no lifting more than 5–10 pounds.  Doc. 61 at 18–22. But plaintiff has met this argument, marshalling evidence that reassignment could have accommodated her.

"The ADA lists 'reassignment to a vacant position' as a possible reasonable accommodation." *Herrmann*, 21 F.4th at 674 (quoting 42 U.S.C. § 12111(9)).

> To meet a prima facie case of reassignment as a reasonable accommodation, a plaintiff must make an initial showing that:
>
> (1) The employee is a disabled person within the meaning of the ADA and has made any resulting limitations from his or her disability known to the employer;
>
> (2) The preferred option of accommodation within the employee's existing job cannot reasonably be accomplished;
>
> (3) The employee requested the employer reasonably to accommodate his or her disability by reassignment to a vacant position, which the employee may identify at the outset or which the employee may request the employer identify through an interactive process, in which the employee in good faith was willing to, or did, cooperate;
>
> (4) The employee was qualified, with or without reasonable accommodation, to perform one or more appropriate vacant jobs within the company that the employee must, at the time of the summary judgment proceeding, specifically identify and show were available within the company at or about the time the request for reassignment was made; and
>
> (5) The employee suffered injury because the employer did not offer to reassign the employee to any appropriate vacant position.

13

*Id.* at 674–75 (quotation cleaned up). Defendant zeroes in on components two, three, and four in *Herrmann*'s list. Doc. 70 at 22–24. Its arguments fail to persuade the court—especially given the court's conclusion that a reasonable jury could find that defendant stymied the interactive process.

Defendant's first argument—that plaintiff fails component two—is self-defeating. If defendant could have accommodated her within her existing position, then defendant shouldn't have terminated her. Defendant bears responsibility for failing to identify these reasonable accommodations by ditching the interactive process—or at least a jury could so find.

A similar issue undermines defendant's argument about the third component. It's true that plaintiff didn't request a transfer. But a plausible explanation for that failure is that defendant fired plaintiff without exploring reasonable alternatives to termination. The court hearkens, once more, to our Circuit's observation "that an employer's failure to engage in the interactive process will often make it difficult to resolve a case for the employer on summary judgment[.]" *Aubrey*, 975 F.3d at 1010 (quotation cleaned up). Our Circuit specifically has recognized reassignment as a reasonable outcome from the interactive process. *See id.* at 1012 ("If the employee is unable to return to her previous job, reassignment to a vacant position can be a reasonable accommodation and is particularly amenable to consideration during a genuine interactive process between the employee and employer."). A jury rationally could fault defendant for plaintiff's failure to lodge a specific request for reassignment.

Finally, defendant argues, plaintiff hasn't identified a reasonable vacant position. This assertion is simply wrong. Plaintiff has offered evidence that there was a vacant computer-para position. Doc. 67-9 at 2 (Ma Aff. ¶ 6). And she has offered evidence that this position wasn't physically demanding. *Id.* Defendant asks the court to exclude this evidence under Fed. R.

14

Evid. 602, asserting that Ruthie Ma lacked personal knowledge to testify about a vacancy.  Doc. 70 at 4.  The court disagrees.  Ma's affidavit states that she "has personal knowledge of the facts set forth" in the document.  Doc. 67-9 at 1 (Ma Aff.).  Ma worked for defendant.  *Id.* (Ma Aff. ¶ 2).  And her affidavit explains that she based her assertion of a computer-para vacancy on her observation that defendant "underpaid the position and would routinely hire a substitute to temporarily fill the vacancy."  *Id.* at 2 (Ma Aff. ¶ 6).  These points suffice "to support a finding that the witness has personal knowledge of the matter."  Fed. R. Evid. 602.  Defendant's arguments that Ma isn't a manager and doesn't work for the HR department are credibility arguments for the factfinder to evaluate.  But they're no bar to admissibility.  Plaintiff has presented competent evidence at summary judgment that a vacant position was available and that defendant could have accommodated her by reassigning her to that vacant position.

Plaintiff has adduced evidence of a specific, vacant position that could have accommodated her disability.  This showing suffices to avoid summary judgment.  *See Aubrey*, 975 F.3d at 1012–13 (holding that employee's identification of specific position for reassignment sufficed to avoid summary judgment).  Once again, defendant's failure to engage in the interactive process undercuts its summary-judgment position that no reasonable accommodation existed.  *See Dansie*, 42 F.4th at 1194 n.2.  A reasonable factfinder could find that defendant reasonably could accommodate plaintiff's disability but it refused to do so.  The court thus denies defendant's request for summary judgment against plaintiff's failure-to-accommodate claim.

The court turns to plaintiff's ADA discrimination claim, next.

### B.    Disability Discrimination

Plaintiffs can prove a disability-discrimination claim with direct or circumstantial evidence.  *Hampton*, 87 F.4th at 1198.  Plaintiff here hasn't argued that she has direct evidence

of disability discrimination.  *See* Doc. 67 at 28–29.  So, the court applies the *McDonnell-Douglas* burden-shifting analysis.  *Aubrey*, 975 F.3d at 1014.  Under this framework, plaintiff *first* must "establish a prima facie case of discrimination by showing (1) that she is disabled within the meaning of the ADA; (2) that she is qualified for the job held or desired; and (3) that she was discriminated against because of her disability."  *Id.* (quotation cleaned up).  *Second*, defendant must proffer a "legitimate, non-discriminatory reason for terminating" plaintiff.  *Id.*  If defendant does so, plaintiff, *third*, must come forward with evidence showing that defendant's "justification for terminating her was a pretext for disability discrimination."  *Id.* at 1015.

The parties' briefing on this claim is unsatisfying.  Despite writing much about the claim, defendant never references the *McDonnell-Douglas* framework.  *See* Doc. 61 at 14–22.  Not wanting defendant to steal the show, plaintiff too fails to discuss *McDonnell-Douglas*.  And she neglects to forward any argument that defendant's proffered explanation is pretextual.  *See* Doc. 67 at 28–29.  But suspect briefing doesn't diminish the court's duty to apply governing law.  *See, e.g.*, *United States v. Spradley*, 146 F.4th 949, 958 (10th Cir. 2025) (explaining that courts "can . . . independently state the law even when the parties share a misunderstanding"); *Gardner v. Galetka*, 568 F.3d 862, 879 (10th Cir. 2009) (explaining that parties can't "stipulate or bind [courts] to application of an incorrect legal standard").  So, the court does the best it can to fit the parties' respective positions into the *McDonnell-Douglas* framework.

The court assumes, without deciding, that plaintiff has adduced sufficient evidence to support a prima facie case of disability discrimination.

So, the court turns to defendant's legitimate, nondiscriminatory explanation for terminating plaintiff.  Defendant asserts that it fired plaintiff because she "could not perform the essential functions of her job" and "had exhausted all leave available to her and did not have

16

information suggesting a return date[.]" Doc. 61 at 26. This qualifies as a legitimate, nondiscriminatory explanation. *See Herrmann*, 21 F.4th at 678–79 (concluding that notice, which announced that plaintiff's inability to return to work for medical reasons, was "benign" and "not direct evidence of discriminatory animus"); *see also Aubrey*, 975 F.3d at 1014–15 (finding defendant's explanation that plaintiff couldn't "perform the essential duties of her job" satisfied this prong). Defendant's explanation suffices to carry its "exceedingly light" burden at step two. *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017) (quotation cleaned up).[8]

This conclusion places the ball on plaintiff's side of the net to show pretext. "A plaintiff demonstrates pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." *Litzsinger v. Adams Cnty. Coroner's Off.*, 25 F.4th 1280, 1287 (10th Cir. 2022) (quotation cleaned up). "Pretext may be established by revealing weaknesses, implausibilities, inconsistencies, incoherence, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id.* (quotation cleaned up).

Plaintiff here never explains why a rational factfinder could conclude that defendant's explanation is pretextual. *See* Doc. 67 at 28–29. Indeed, when discussing her discrimination claim, plaintiff doesn't mention pretext once. *See id.* In the portion of her brief discussing retaliation, plaintiff feebly asserts that "bad faith can be inferred because" defendant represented

---

[8] Though the court already has decided that a reasonable factfinder could reject defendant's explanation for terminating plaintiff, that determination doesn't control at step two of *McDonnell Douglas*. At step two, a defendant can act in good faith on a mistaken belief—*i.e.*, that plaintiff can't return to work indefinitely. *See Piercy v. Maketa*, 480 F.3d 1192, 1200 (10th Cir. 2007) ("Even a mistaken belief can be a legitimate, non-pretextual reason for an employment decision." ).

17

that it had engaged in the interactive process even though it hadn't.  *Id.* at 33.  This argument, for whatever it's worth, doesn't suggest that defendant fired plaintiff for any reason other than that she had exhausted her leave.  In other words, while a factfinder properly could conclude that defendant didn't engage in the interactive process, plaintiff hasn't demonstrated why a reasonable factfinder could take that point and conclude that defendant's explanation for firing plaintiff is "unworthy of credence."  *Litzsinger*, 25 F.4th at 1287 (quotation cleaned up).

Plaintiff thus has failed to raise a triable issue that defendant unlawfully terminated her because of her disability.  Defendant fired plaintiff because she was out of leave.  While it's true that defendant should've engaged in the interactive process before it fired her, plaintiff hasn't adduced any evidence that her disability "resulted in her being treated differently from other employees who [had] exhausted available leave."  *Herrmann*, 21 F.4th at 679.  The court thus grants summary judgment against plaintiff's ADA discrimination claim.

Plaintiff fares no better on her retaliation claim, a conclusion the court explains next.

### C.    Retaliation

"The ADA's retaliation statute provides that '[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.'"  *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1209 (10th Cir. 2018) (quoting *Foster*, 830 F.3d at 1186).  Because plaintiff hasn't adduced direct evidence of retaliation, the same *McDonnell-Douglas* framework governs her ADA retaliation claim.  *Id.*  Once more, the court assumes, without deciding, that plaintiff has carried her burden to set forth a prima facie case of discrimination.  And once more, defendant has offered a facially neutral explanation for terminating her employment.  *See Herrmann*, 21 F.4th at 679.  The court already has rejected plaintiff's weak pretext argument.  It needn't redo

that work. *See Edmonds-Radford v. Sw. Airlines Co.*, 17 F.4th 975, 994 (10th Cir. 2021) (holding that ADA retaliation claim failed where plaintiff failed to establish pretext for ADA discrimination claim). The long and short of it is this: plaintiff has failed to come forward with evidence from which a jury could find that defendant "acted with a retaliatory animus when it terminated" her. *Herrmann*, 21 F.4th at 680. The court thus enters summary judgment against plaintiff's retaliation claim.

## IV.    Conclusion

Plaintiff has created and presented a triable issue whether defendant unlawfully failed to accommodate her disability. The court thus denies defendant's request for summary judgment against that claim. But the summary-judgment record contains no evidence suggesting that defendant's proffered reason for terminating plaintiff—that her leave had expired—was pretextual. So no reasonable jury could find for plaintiff on her ADA discrimination or ADA retaliation claims. The court thus grants defendant's request for summary judgment against those claims.[9]

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Blue Valley Unified School District 229's Motion for Summary Judgment (Doc. 60) is granted in part and denied in part.

**IT IS FURTHER ORDERED THAT** plaintiff Esther Kidwell's Motion for Leave to File Sur-Reply (Doc. 71) is denied.

---

[9]    Plaintiff also filed a Motion for Leave to File Sur-Reply (Doc. 71). Most of the issues plaintiff seeks leave to argue aren't relevant to the court's analysis. And even without her proposed sur-reply, the court agrees with plaintiff's argument that Ma's affidavit is admissible. The court thus denies plaintiff's Motion for Leave to File Sur-Reply (Doc. 71) as moot.

**IT IS SO ORDERED.**

**Dated this 4th day of June, 2026, at Kansas City, Kansas.**

<u>s/ Daniel D. Crabtree</u>
**Daniel D. Crabtree**
**United States District Judge**